IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CHRIS CHECKETTS and SANDRA CHECKETTS, <br><br> Defendants. | **MEMORANDUM OPINION AND ORDER** <br><br><br> Case No. 2:11-CV-00250-BSJ <br><br> Judge Bruce S. Jenkins |

This case came before the court for hearing on June 5, 2014. The Tenth Circuit Court of Appeals has reversed and remanded *Am. Nat. Prop. & Cas. Co. v. Checketts*, No. 2:11-CV-250 BSJ, 2012 WL 1835866 (D. Utah May 21, 2012),[1] and instructed this court "to reconsider its decision in light of Utah's revised [Underinsured Motorist (UIM) statute, Utah Code Ann. § 31A–22–305.3 (2012)]."[2] A. Joseph Sano and Peter H. Barlow appeared on behalf of Plaintiff American National Property and Casualty Company ("ANPAC"). Daren G. Mortenson appeared on behalf of Defendants Chris Checketts and Sandra Checketts (collectively the "Checketts"). The parties had filed competing briefs as to what remained for decision.

---

[1] *Am. Nat. Prop. & Cas. Co. v. Checketts*, No. 2:11-CV-250 BSJ, 2012 WL 1835866 (D. Utah May 21, 2012) rev'd and remanded sub nom. *Am. Nat. Prop. & Cas. v. Checketts*, 528 F. App'x 851 (10th Cir. 2013).

[2] "The issue on appeal is whether the district court failed to properly consider Utah's revised UIM statute, Utah Code Ann. § 31A–22–305.3 (2012), which became effective while the parties' cross-motions for summary judgment were pending. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand with instructions for the district court to reconsider its decision in light of Utah's revised statute." *Am. Nat. Prop. & Cas. v. Checketts*, 528 F. App'x 851, 851 (10th Cir. 2013).

## **BACKGROUND**

On September 6, 1996, the Checketts applied for automobile insurance with ANPAC.[3] At that time, the Checketts rejected Underinsured Motorist Bodily Injury Coverage (referred to as "UIMBI" or "UIM") coverage.[4] While insured by ANPAC, the Checketts added and removed various vehicles to their policy as well as put their daughter, Alisha, on the insurance as an additional driver on March 6, 2006.[5] Due to these changes, the premiums paid by the Checketts varied, sometimes significantly, over the years.[6]

On June 18, 2007, Sandra Checketts and her son Jake were involved in an automobile accident.[7] Sandra and Jake settled their claims for personal injuries and damages against the other driver, Michael Hedden, for the limits of his liability policy.[8] The Checketts also made a demand for UIM benefits with ANPAC $100,000 for Jake's injures and $100,000 for Sandra's injures.[9] The Checketts allege that they are entitled to a combined total $200,000 ($100,000 each) in UIM benefits on the basis that the rejection of such coverage is invalid and unenforceable because ANPAC did not make the required UIM notifications and obtain the appropriate waiver of UIM coverage in light of Utah Code Ann. § 31A–22–305 (Supp. 2001) ("2000 UIM statute").[10] The Checketts assert that because the rejection of UIM coverage is invalid and unenforceable, they are entitled to UIM coverage in an amount equal to ANPAC policy's per person liability limit $100,000 because of the absence of new notice.[11]

---

[3] *See* Def.'s Post-Appeal Br., filed Sept. 9, 2013 (CM/ECF No. 32), at ex. A.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

ANPAC denied the Checketts' claim for UIM benefits and filed a declaratory relief action in this court seeking a judicial determination concerning the validity of the Checketts' rejection of UIM coverage on March 16, 2011.[12] While this case was being decided before this court, two important pieces of law relevant to this case were promulgated: *Iverson v. State Farm Mutual Insurance Company,* 2011 UT 34, 256 P.3d 222 (Utah 2011) and amendments to Utah Code Ann. § 31A–22–305.3(3)(b) (2012) (effective May 8, 2012) ("2012 UIM statute").

In *Iverson*, the Utah Supreme Court held that Utah Code Ann. § 31A–22–305 (Supp. 2001) ("2000 UIM statute") was ambiguous in its meaning of "new policy" and thus it was appropriate for courts to "turn to other interpretative tools to assign meaning to this term."[13] Using legislative history and policy considerations, the Utah Supreme Court found that the 2000 UIM statute contained "a broader definition of 'new policy' that include[d] not only new contractual relationships but also material changes to an existing policy that alter the risk relationship between the insurer and the insured."[14] The Utah Supreme Court essentially engaged in a materiality test whereby the totality of the circumstances was examined in order to determine whether changes to an insurance policy were material enough to "meaningfully alter the risk relationship between the insurer and the insured."[15] In the event that changes satisfied the materiality analysis, it was deemed permissible for a court to determine that a "new policy" had been established and apply the 2000 UIM statute accordingly.

In addition to *Iverson*, another development relevant to this case occurred. The Utah Legislature made amendments to the 2000 UIM statute that became effective May 8, 2012.[16] The

---

[12] *Id.*
[13] *Iverson v. State Farm Mut. Ins. Co.*, 2011 UT 34, at ¶ 15, 256 P.3d 222, 226.
[14] *Id.*
[15] *Id.* at 227.
[16] *See supra* note 3.

3

changes to the 2000 UIM statute specifically defined "new policy," cleared up State ambiguities, and expressly identified that definition to be retroactive.

Taking these significant changes into account, on May 21, 2012 the district court issued its ruling, granting in part and denying in part both parties' motions for summary judgment.[17] The court rejected the Checketts argument that ANPAC had failed to comply with the notification requirements under the 2000 amendment to Utah's 2000 UIM statute because the Checketts had, in writing, rejected UIM coverage in its entirety.[18] Also, the court found that ANPAC was under no duty to provide additional UIM information with the first two renewal notices after January 1, 2001 because the Checketts had rejected UIM coverage in its entirety and thus, Utah Code Ann. § 31A–22–305(9)(g) did not apply to the Checketts.[19] However, the court accepted the Checketts' new argument that under *Iverson*, the addition of their teenage daughter, Alisha, to their policy as well as other factors, such as adding several vehicles to the policy, "meaningfully altered the risk relationship" between ANPAC and the Checketts such that a "new policy" was created, requiring ANPAC to issue a new notice and obtain a new waiver.[20]

ANPAC appealed the decision to the Tenth Circuit Court of Appeals[21] and on June 26, 2013, that court reversed the decision of the district court. The Tenth Circuit Court of Appeals characterized the district court's judgment as holding that the Checketts' oldest daughter, Alisha, had been added as a new "named insured" and pointed out that was not so. She, according to the Tenth Circuit Court of Appeals, was added as a new driver. Such did not add a named insured to their policy. The Tenth Circuit Court of Appeals reversed this court's decision which had granted the Checketts partial summary judgment and remanded the case for further consideration, with

---

[17] *See* Mem. Op. & Ordered, filed May 21 (CM/ECF No. 21), at 21.
[18] *Supra* note 17 at 12.
[19] *See supra* note 1 at 4.
[20] *See supra* note 17 at 19.
[21] *See* Notice of Appeal, filed June 21, 2012 (CM/ECF No. 23).

directions that this court specifically "reconsider its decision in light of Utah's revised [Underinsured Motorist (UIM) statute, Utah Code Ann. § 31A–22–305.3 (2012)]."[22]

## DISCUSSION

Implicit in the determination by the Court of Appeals that adding Alisha as a new driver to the policy of the Checketts did not add her as a named insured. It appears no new policy was created under the old statue as construed which required new notice. It appears to this court that such a determination obviates the necessity of considering in depth the application of the 2012 legislation. In short, if no notice is required under the old statute as construed, then it is unnecessary to be concerned with the new statute.

Absent a new policy, the early rejection by the Checketts of uninsured or under insured coverage remains extant.

While the new legislation purports to clarify definitions and legislative intent, upon further consideration, one need not be concerned with the statute, retroactive or not, constitutional or not, claim filed timely or not, because the absence of a new policy leaves the old notice in place and the old rejection in place. In passing, the new statute clarifies and fortifies legislative intent.

Thus, for the above reasons, Plaintiffs Motion for Summary Judgment [CM/ECF No. 13] is GRANTED. Counsel for Plaintiff to prepare and submit a suggested form of Judgment within 10 days.

SO ORDERED this 25th day of March, 2016.

Bruce S. Jenkins
United States Senior District Judge

---

[22] *Id.* at 851.